UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CHRIS ANDRE LIVOUS

CIVIL ACTION

VERSUS

NO. 11-87-JJB

OTIS ELEVATOR CO., ET AL.

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a motion to alter or amend this Court's prior ruling (Doc. 51) denying Defendants Otis Elevator Company and Hartford Fire Insurance Company's (collectively referred to as "Otis") motion for summary judgment. (Doc. 53). Plaintiff Chris Andre Livous ("Livous") has filed an opposition. (Doc. 56). Oral argument is not necessary. For the reasons herein, the Court GRANTS Otis's motion to alter (Doc. 51) and DENIES Otis's motion for summary judgment. (Doc. 36). Otis's motion to strike (Doc. 45) is DENIED.

I.

Livous filed this action seeking damages arising from an incident on December 20, 2010, in which Livous boarded an elevator in the Municipal Building in Baton Rouge, Louisiana on the third floor. (Doc. 1). The elevator car allegedly fell to the bottom floor, "landing violently," and then quickly accelerated to the top floor, where the car stopped and lost power. (Doc. 1). Livous filed this suit against Otis Elevator Company[1], the maintenance contractor for the elevator, alleging that Otis was negligent in servicing and maintaining the elevator. Otis has filed a motion for summary judgment, arguing that Livous is unable to prove that Otis knew or should have known of the existence of a defect in the elevator and Otis failed to remedy the defect.

---

[1] Livous has also asserted a claim against Hartford Fire Insurance, Otis's insurance provider.

Under Louisiana law, an elevator maintenance contractor owes a duty of reasonable care. *Campbell v. Otis Elevator Co.*, 808 F.2d 429, 433-34 (5th Cir. 1984). To recover under Louisiana's negligence law, a plaintiff must establish the following: "(1) [t]he conduct in question was a cause in fact of the resultant harm; (2) [t]he defendant owed a duty to plaintiff; (3) [t]he duty owed was breached; and (4) [t]he risk or harm caused was within the scope of the breached duty." *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1361-62 (La. 1992) (citation omitted). "To prove negligence, the plaintiffs must show that Otis as the maintenance contractor breached its duty to exercise reasonable care in the performance of services under its contract with the [building] and that Otis' conduct was a cause in fact of the resulting injury." *Rabito v. Otis Elevator Co.*, 93-1001 (La.App. 4th Cir. 2/11/94); 633 So. 2d 368, 372. Thus, the question becomes whether Otis knew or, in the exercise of reasonable care, should have known of a condition in the elevator that rendered the elevator unreasonably dangerous. (Doc. 53 at 4).

Before turning to the substantive arguments of the parties, the Court will address Otis's motion to strike the affidavit of Livous's expert, Zack R. McCain, Jr. ("McCain"). (Doc. 45). Livous attached an affidavit in support of his opposition to Otis's motion for summary judgment and Otis argues that this affidavit was submitted after the deadline for expert reports and contains new opinions that contradict McCain's prior deposition testimony. In McCain's November 2012 deposition, he testified that he could not "identify the problem with the controller or drive that caused the elevator to . . . run away with Mr. Livous in it[.]" (Doc. 36, Ex. F). McCain also testified that he could not say that the issue that caused the elevator to malfunction on the date of Livous's accident was the same issue that caused other "pre-accident shutdown[s]." (*Id.*).

However, in McCain's supplemental affidavit, he states that the "Service history callback records clearly indicate that Otis knew or should have known of the existence of the defects in

the controller/drive which were causing the repeated operational problems to the controller on a regular basis for over one year prior to the accident." (Doc. 40, Ex. 2). Otis asserts that while McCain testified in his deposition that he could not determine a connection between the cause of the pre-accident callbacks and the cause of the elevator malfunction giving rise to Livous's accident, his affidavit suggests that the pre-accident callbacks indicate a history of problems concerning the controller and/or drive.

In opposition, Livous argues that Otis cherry-picks portions of McCain's testimony and that McCain did testify about the pre-accident callbacks.  McCain testified that whenever there was a reported issue about "the elevator falling or shaking . .. [Otis] just hit the reset on the controller without running diagnostics to determine what was causing the problem[.]" (Doc. 46, Ex. 2). McCain also testified that "the problems were evident due to the number of callbacks where he adjusted or troubleshot or checked the driver of the controller or the processor." (*Id.*).

The Court finds that the affidavit does not contradict deposition testimony and does not offer new opinions. Rather, the affidavit just reinforces McCain's prior expert report and testimony. Thus, the Court denies Otis's motion to strike the affidavit.

## II.

Turning to the parties' substantive arguments, Otis argues that there is no evidence that Otis knew or should have known of any condition in the elevator that caused it to operate in the manner that it did on the date of Livous' accident. (Doc. 36). Otis asserts that neither the maintenance records nor the testimony of any witnesses shows notice of an unreasonably dangerous condition. Furthermore, Otis argues that Livous is unable to prove that Otis knew or should have known of any problems with the elevator. First, Otis asserts that McCain as an expert cannot identify what caused the accident. Otis points to McCain's deposition testimony in

which McCain testified that he was unable to identify "the problem with the controller or drive that caused the elevator to . . . run away with Mr. Livous in it[.]" (Doc. 36, Ex. F, p. 162). Otis contends that because McCain cannot identify the problem, he cannot state that Otis knew or should have known what the problem was.

Additionally, Otis asserts that Livous is still unable to prove notice through McCain's theory that other pre-accident callbacks or shutdowns would have put Otis on notice that there was something defective about the elevator when the pre-accident callbacks were for issues unrelated to accident at issue. During McCain's deposition, counsel asked McCain "[g]iven that you can't say what the cause of any particular pre-accident shutdown was, you cannot say that the same problem caused Mr. Livous's incident; right?" and McCain agreed. (Doc. 36, Ex. F, p. 162-63). Finally, Otis argues that because McCain is unable to identify what condition caused the problem, Livous cannot establish that Otis knew or should have known about the condition.

In opposition, Livous argues that there is sufficient evidence showing that there were multiple maintenance problems "indicative of generally inadequate maintenance by Otis of the elevator." (Doc. 40 at 10). McCain explained that a problem in the drive component of the controller would cause an elevator to accelerate and decelerate rapidly and explained that Otis had a history of "just reset[ting] the controller" whenever there was an issue about the "elevator falling or shaking." (Doc. 46, Ex. 2, p. 70). McCain also referenced his initial report, noting that the problem with the controller and/or drive has existed for more than a year prior to the accident, which would be sufficient to put Otis on notice. (*Id.*, at 82). Moreover, McCain quoted an e-mail sent by Dean Stewart ("Stewart"), a representative of Otis, in which Stewart stated "We have had problems with this particular drive twice before and have spoken to the company

that installed the controller." (*Id.*, at 150).  Additionally, Livous points to deposition testimony[2]

of employees or building managers who had ridden the elevator to establish that Otis knew or

should have known of a dangerous condition in the elevator. The deponents testified that the

elevator is often broken and that they would either refuse to ride it or knew of people who

refused to ride it. Livous contends that this is sufficient to establish that Otis knew or should

have known of a defect in the elevator.

    In reply, Otis argues that the drive and controller are two separate entities, and thus, a

problem with the drive does not necessarily imply a problem with the controller, and vice versa.

Otis contends that the drive provides the power, whereas the controller is the "brains" of the

system, and McCain agreed with this distinction in his deposition. Otis argues that it is essential

not to conflate the two components because there were issues involving the controller, but not

the drive. Although there were pre-accident service calls, Otis asserts that there were only two

callbacks involving the drive and, contrary to Livous' assertions, Otis did not just merely reset

the controller. Rather, the first callback occurred on March 12, 2010, which reported that the

elevator was out of service. Otis' mechanic discerned that the problem was a loose wire and he

tightened it. (Doc. 40, Ex. S). The second callback occurred on July 15, 2010, in which the

---

[2] The following individuals were deposed and all exhibits are attached to record document 40.
  1. Stephanie Black (Ex. F) (testifying that she had gotten stuck on the elevator in the past and was wary of riding it alone)
  2. Harry Brown (Ex. H.) (testifying that the elevator was often broken and that the elevator would jerk and throw him)
  3. Jackie Cavin (Ex. J) (testifying she would not take the elevator)
  4. Terrance S. Patterson (Ex. K) (testifying he would not take the elevator)
  5. Tasha G. Ferguson (Ex. L) (testifying she would not take the elevator)
  6. Jamie Franklin (Ex. M) (testifying she had heard of people being stuck in the elevator)
  7. Mark Firmin (Ex. N) (testifying that the elevator had slipped when he was riding it and being stuck in the elevator numerous times)
  8. James Scott Southall (Ex. O) (testifying that he had heard of a woman complaining that the elevator had fallen prior to Livous' accident)
  9. Vanessa Dargin (Ex. P) (testifying that she had heard of people getting stuck in the elevator)

elevator was out of service with a passenger inside. The mechanic adjusted the settings of the drive. (*Id.*).

Moreover, Otis asserts that there were no pre-accident shutdowns that involved an elevator falling, accelerating rapidly, or coming to an abrupt stop. Otis argues that the deposition testimony of witnesses who had ridden in the elevator does not support Livous' theory that Otis had notice of a dangerous condition in the elevator prior to his accident. Otis asserts that the testimony is either hearsay or incidents occurring after the accident occurred, which would not establish Otis' pre-accident notice. Otis contends that Livous has failed to meet his burden and thus, summary judgment should be granted in Otis' favor.

III.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The movant, or party seeking summary judgment, bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). As discussed *supra*, under Louisiana law, an elevator maintenance contractor owes a duty of reasonable care. *Campbell*, 808 F.2d at 433-34. To recover under Louisiana's negligence law, a plaintiff must establish the following: "(1) [t]he conduct in question was a cause in fact of the resultant harm; (2) [t]he defendant owed a duty to plaintiff; (3) [t]he duty owed was breached; and (4) [t]he risk or harm caused was within the scope of the breached duty." *Spott*, 601 So.2d at 1361-62 (citation omitted). "To prove negligence, the plaintiffs must show that Otis as the maintenance contractor breached its duty to exercise reasonable care in the performance of services under its contract with the [building] and that Otis' conduct was a cause in fact of the resulting injury." *Rabito*, 633 So. 2d at 372.

The Court finds that the factual scenario here is dissimilar to the one decided by the Louisiana Fourth Circuit Court of Appeals in *Ledet v. Montgomery Elevator Co.*, 94-0411 (La. App. 4th Cir. 10/13/94); 644 So.2d 1075, and relied upon by Otis. In *Ledet*, the plaintiff sued an elevator maintenance company after she was injured when she attempted to open the doors and exit an elevator, which was stuck between floors. The Fourth Circuit noted that "plaintiff simply asserts that because this particular elevator had recurring problems necessitating repeated service calls by defendant, defendant must have been negligent in repairing the elevator." *Ledet*, 644 So.2d at 1077. However, the court rejected this contention because "each of the calls required different repairs" and there was no evidence that the "elevator continued to break down in the same way." *Id.* The court concluded that the elevator maintenance company had not been negligent.

Here, however, unlike *Ledet*, the Court finds that there is a genuine issue of material fact as to the reasons necessitating the callbacks and the repairs. The elevator in question had a slew of problems and it is a genuine issue of material fact as to whether Otis knew or should have known that there was a problem with the drive that would cause the elevator to accelerate and decelerate rapidly.

Accordingly, Otis' motion for reconsideration (Doc. 53) is GRANTED and Otis' motion for summary judgment is DENIED (Doc. 36).

Signed in Baton Rouge, Louisiana on June 20th, 2013.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**